**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RECONSTRUCTIVE ORTHOPAEDIC** | : | **CIVIL ACTION** |
| **ASSOCIATES II, LLC d/b/a** | : | |
| **The Rothman Institute** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ZURICH AMERICAN** | : | |
| **INSURANCE COMPANY** | : | **NO. 21-4003** |

<u>**MEMORANDUM OPINION**</u>

Savage, J.                                                                September 29, 2022

The governmental shutdown orders issued during the COVID-19 pandemic have generated a flood of insurance coverage litigation. Businesses have sought coverage of losses resulting from forced closures. This is another one of those cases.

Plaintiff Reconstructive Orthopaedic Associates II, LLC, doing business as The Rothman Institute, seeks a declaration that defendant Zurich American Insurance Company must cover its business losses suffered as a result of government orders that prevented it from performing elective surgical procedures at some of its healthcare facilities during the COVID-19 pandemic. Zurich has moved to dismiss Rothman's complaint, contending that Rothman has failed to plead facts establishing coverage of any of its losses. We agree.

**Factual Background**[1]

Rothman insured 43 healthcare facilities and administrative buildings in Pennsylvania, New Jersey, and New York[2] under a commercial property policy issued by Zurich.[3]   While the policy was in effect, the COVID-19 pandemic hit, instigating governmental responses affecting the uses of some of the insured properties.

On March 19, 2020, Pennsylvania suspended "all elective admissions, surgeries and procedures."[4]   New Jersey and New York similarly issued orders prohibiting all elective surgeries.   As a result, Rothman was forced to limit its business operations at several locations in Pennsylvania, New Jersey, and New York.[5]   In the following months, "numerous other orders . . . further limited or suspended Rothman's business operations in Pennsylvania."[6]

Rothman alleges that "certain" of its businesses were "fully closed to patients, physicians and administrators for things like injections, elective procedures, administrative duties and research while separate physical therapy locations operated at a reduced capacity."[7]

After months of discussion, Zurich offered Rothman "limited coverage potentially available under the 'Communicable Disease Suspension of Operations – Business

---

[1] The facts are recited from the Complaint.  We accept the well pleaded facts as true and draw all reasonable inferences from them in favor of Rothman.

[2] Compl. ¶ 11, ECF No. 1 at 6–30 (attached as Ex. A to Notice of Removal); *see also* Property Portfolio Protection Policy, Policy No. CPP4613231-02 at Schedule of Locations, U-GU-618-A CW (10/02), ECF No. 1 at 71–74 ["Policy"] (attached as Ex. A to Compl., ECF No. 1 at 61–251).

[3] Compl. ¶ 10.

[4] *Id.* ¶¶ 32–33.

[5] *Id.* ¶¶ 37, 42, 47.

[6] *Id.* ¶ 36.

[7] *Id.* ¶ 64.

Income' provision for four of Rothman's administrative locations" and denied coverage "for the remainder of Rothman's insurance claim."[8]  Rothman then filed this action.

### Interpreting Insurance Contracts

The interpretation of an insurance contract is a question of law.  *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011) (citations omitted).  Here, the parties agree Pennsylvania law governs.

A court must interpret the plain language of an insurance contract read in its entirety, giving effect to all its provisions.  *Id.*  (citation omitted); *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 258 (3d Cir. 2019) (quoting *Mut. of Omaha Ins. Co. v. Bosses*, 237 A.2d 218, 220 (Pa. 1968)).  The words in the policy are construed by their "natural, plain and ordinary sense" meaning.  *Riccio v. Am. Republic Ins. Co.*, 705 A.2d 422, 426 (Pa. 1997) (citing *Easton v. Wash. Cnty. Ins. Co.,* 137 A.2d 332, 335 (Pa. 1958)).

When the policy language is ambiguous, the provision is construed in favor of the insured.  *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 677 (3d Cir. 2016) (quoting *Med. Protective Co. v. Watkins,* 198 F.3d 100, 104 (3d Cir. 1999)); *Pa. Nat'l Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014) (quoting *401 Fourth St., Inc. v. Invs. Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005)).  The policy is ambiguous where it is reasonably susceptible of more than one construction and meaning.  *Pa. Nat'l*, 106 A.3d at 14 (citing *Lititz Mut. Ins. Co. v. Steely*, 785 A.2d 975, 978 (Pa. 2001)).  However, policy language may not be stretched beyond its plain meaning to create an ambiguity.  *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 164 (3d Cir. 2011) (citing *Madison Constr. Co. v.*

---

[8] *Id.* ¶ 53 (quoting Letter from Andrew Goffron, National General Adjuster for Zurich American Insurance Company to Nicole Coleman (June 25, 2020) at 1, ¶ 1, ECF No. 1 at 268–76 (attached as Ex. E to Compl.)).

*Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)); *Trizechahn Gateway LLC v. Titus,* 976 A.2d 474, 483 (Pa. 2009) (citation omitted).   It is not ambiguous merely because the parties disagree about its meaning.  *Meyer*, 648 F.3d at 164 (citing *Williams v. Nationwide Mut. Ins. Co.,* 750 A.2d 881, 885 (Pa. Super. Ct. 2000)).

The guiding principle in interpreting an insurance contract is to effectuate the reasonable expectations of the insured.  *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997) (citations omitted); *Safe Auto Ins. Co. v. Berlin*, 991 A.2d 327, 331 (Pa. Super. Ct. 2010) (citations omitted).  Courts must examine the totality of the insurance transaction to determine the insured's reasonable expectations.  *Consol. Rail Corp. v. ACE Prop. & Cas. Ins. Co.*, 182 A.3d 1011, 1026 (Pa. Super. Ct. 2018) (quoting *St. Paul Mercury Ins. Co. v. Corbett*, 630 A.2d 28, 30 (Pa. Super. Ct. 1993)).  But, reasonable expectations will not overcome clear and unambiguous contract language.  *Id.* ("However, while reasonable expectations of the insured are focal points in interpreting the contract language of insurance policies, an insured may not complain that . . . reasonable expectations were frustrated by policy limitations which are clear and unambiguous." (quoting *Corbett*, 630 A.2d at 30)); *Millers Cap. Ins. Co. v. Gambone Bros. Dev. Co.*, 941 A.2d 706, 717 (Pa. Super. Ct. 2007) (citations omitted).  There are circumstances in which the insured's reasonable expectations of coverage will prevail over the express and unambiguous terms of a policy.  For example, where the insurer intentionally misled the insured to believe there was coverage or unilaterally changed the policy without notifying the insured.  *See UPMC Health Sys. V. Metro. Life. Ins. Co.*, 391 F.3d 497, 503 (3d Cir. 2004) (quoting *Bensalem Township v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3d Cir. 1994)).

The insured has the initial burden of establishing coverage under the policy. *State Farm Fire & Cas. Co. v. Estate of Mehlman,* 589 F.3d 105, 111 (3d Cir. 2009) (citing *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.,* 98 F.3d 1440, 1446 (3d Cir. 1996)). On the other hand, the insurer has the burden of proving that an exclusion applies. *Id.* (citing *Koppers Co.*, 98 F.3d at 1446)*; Wolfe v. Ross*, 115 A.3d 880, 884 (Pa. Super. Ct. 2015) (citing *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007)). Policy exclusions are strictly construed against the insurer. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206–07 (3d Cir. 2001) (citing *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998)); *Peters v. Nat'l Interstate Ins. Co.*, 108 A.3d 38, 43 (Pa. Super. Ct. 2014) (quoting *Swarner v. Mut. Ben. Grp.*, 72 A.3d 641, 644–45 (Pa. Super. Ct. 2013)).

## Analysis

Rothman claims that its business losses caused by the shutdown orders are covered under the Business Income Coverage Form, the Extra Expenses Coverage Form, the Additional Coverages Form, and the Communicable Disease provision in the Additional Coverages Form. The applicable policy provisions follow.

### Business Income Coverage & Extra Expenses Coverage

The "Business Income Coverage Form" provides coverage for:

> The actual loss of "**business income**" you sustain due to the necessary "**suspension**" of your "**operations**" during the "**period of restoration**." The "**suspension**" must be caused by direct physical loss or damage to property at a "**premises**" at which a Limit of Insurance is shown on the Declaration for Business Income. The loss or damage must be directly caused by a "**covered cause of loss**."[9]

The "Extra Expenses Coverage Form" provides coverage for:

---

[9] Policy at Business Income Coverage Form, PPP-0130 (08 16) § A, Coverage, ECF No. 1 at 219.

The actual and necessary "**extra expense**" you incur due to direct physical loss of or damage to property at a "**premises**" at which a Limit of Insurance is shown for Extra Expense on the Declarations.  The loss or damage must be directly caused by a "**covered cause of loss**."[10]

Within the Business Income Coverage Form and the Extra Expenses Coverage Form are several additional coverages, including "Civil Authority"[11] and "Ingress/Egress"[12] provisions.  These provisions cover only business losses caused by "direct physical loss or damage" to the insured property or another's property.

---

[10] *Id.* at Extra Expenses Coverage Form, PPP-0132 (08 16) § A, Coverage, ECF No. 1 at 228.

[11] The "Civil Authority" provision of the Business Income Coverage Form states that:

> [Zurich] will pay for the actual loss of "**business income**" you sustain for up to the number of days shown on the Declarations for Civil Authority resulting from the necessary "**suspension**", or delay in the start, of your "**operations**" if the "**suspension**" or delay is caused by order of civil authority that prohibits access to the "**premises**" or "**reported unscheduled premises**".  That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the "**premises**" or "**reported unscheduled premises**" which sustains a "**business income**" loss.  The loss or damage must be directly caused by a "**covered cause of loss**."

*Id.* at Business Income Coverage Form, PPP-0130 (08 16) § B.1, Civil Authority, ECF No. 1 at 228.

The "Civil Authority" provision of the Extra Expenses Coverage Form, which is substantively identical to its Business Income Coverage counterpart, states that:

> [Zurich] will pay for the actual and necessary "**extra expense**" you incur for up to the number of days shown on the Declarations for Civil Authority when an order of civil authority prohibits access to the "**premises**" or "**reported unscheduled premises**".  That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the "**premises**" or "**reported unscheduled premises**" where he "**extra expense**" was incurred.  The loss or damage must be directly caused by a "**covered cause of loss**."

*Id.* at Extra Expenses Coverage Form, PPP-0132 (08 16) § B.1, Civil Authority, ECF No. 1 at 228.

[12] The "Ingress/Egress" provision of the Business Income Coverage Form states that:

> [Zurich] will pay for the actual loss of "**business income**" you sustain for up to the number of days shown on the Declarations for Ingress/Egress following the necessary "**suspension**" of your "**operations**", when ingress or egress by your suppliers, customers, or employees to the "**premises**" or "**reported unscheduled premises**" is physically obstructed due to direct physical loss or damage.  The actual loss of "**business income**" you sustain must be caused by direct physical loss or damage to property not owned, occupied, leased, or rented by you, or insured under this Commercial Property Coverage Part. . . .  The obstruction cannot be the

The business income, the extra expenses, the civil authority, and the ingress/egress provisions contain substantially the same language of similar provisions in commercial policies that we have held do not cover business losses arising from the insureds' inability to use their business properties as a result of the COVID-19 pandemic-related closures.  *See Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 3d 616, 623–24 (E.D. Pa. 2020) ("Property damage is 'distinct, demonstrable, physical alteration of the property.'  Pure economic losses are intangible and do not constitute property damage." (citations omitted)).  Those provisions, here as in *Newchops*, cover only business losses caused by "direct physical loss or damage" to the insured property or another's property.  Loss of use is not structural or physical damage.  Economic damage is not covered.  Therefore, because Rothman has not alleged physical damage to its properties but only economic loss, there is no coverage under the business income, extra expense, the civil authority, and the ingress/egress policy provisions.

---

> result of an order of civil authority that prohibits access to that "**premises**" or "**reported unscheduled premises**".  The loss or damage must be directly caused by a "**covered cause of loss**."

*Id.* at Business Income Coverage Form, PPP-0130 (08 16) § B.7, Ingress/Egress, ECF No. 1 at 220.

The "Ingress/Egress" provision of the Extra Expenses Coverage Form states:

> [[Zurich] will pay for the actual and necessary "**extra expense**" you incur for up to the number of days shown on the Declarations for Ingress/Egress, when ingress or egress by your suppliers, customers, or employees to the "**premises**" or "**reported unscheduled premises**" is physically obstructed due to direct physical loss or damage.  The actual and necessary "**extra expense**" you incur must be caused by direct physical loss or damage to property not owned, occupied, leased, or rented by you, or insured under this Commercial Property Coverage Part. . . . The obstruction cannot be the result of an order of civil authority that prohibits access to that "**premises**" or "**reported unscheduled premises**".  The loss or damage must be directly caused by a "**covered cause of loss**."

*Id.* at Extra Expenses Coverage Form, PPP-0132 (08 16) § B.2, Ingress/Egress, ECF No. 1 at 228.

Even if Rothman could allege "a direct physical loss of or damage" to its own or others' properties, it still could not establish coverage under the "Ingress/Egress" provisions of the Business Income Coverage Form or the Extra Expenses Coverage Form.  There was no physical obstruction preventing access to Rothman's facilities. Plaintiffs allege that their healthcare facilities remained open, and that they only ceased performing elective surgeries.  There is no allegation that a covered cause of loss prevented employees or patients from physically accessing Rothman.

*Microorganism Coverage*

The Business Income Coverage Form and the Additional Coverages Form both contain a microorganism provision.  The "Microorganism" provision of the Business Income Coverage Form states that:

> [Zurich] will pay for the actual loss of "business income" you sustain due to the:
>
> a.      Necessary "**suspension**" of your "**operations**" from direct physical loss of or damage to Covered Property caused by "microorganisms" when the "**microorganisms**" are the result of a "**covered cause of loss**"; or
>
> b.      Prolonged "**period of restoration**" due to the remediation of "**microorganisms**" from a covered loss.[13]

The Additional Coverages Form states that:

> [Zurich] will pay the following when '**microorganisms**' are the result of a '**covered cause of loss'**, other than fire or lightning:
>
> a.      Direct physical loss of or damage to Covered Property caused by '**microorganisms**,' including the cost of removal of the "**microorganism**";

---

[13] *Id.* at Business Income Coverage Form, PPP-0130 (08 16) § 8, Microorganisms, ECF No. 1 at 220–21.

> b.      The reasonable cost to tear out and replace any part of the covered building or other property needed to gain access to the '**microorganisms**'; and
>
> c.      The reasonable cost of testing performed after removal, repair, replacement, or restoration of the damaged property is completed, provided there is a reason to believe that the "**microorganisms**" continue to be present, active, or recur.[14]

The word "microorganism" is defined as "any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, '**fungus**', wet or dry rot, virus, algae, or bacteria, or any by-product."[15]   The COVID-19 virus falls within this definition.

Rothman contends its losses are covered under the Business Income Coverage Form and the Additional Coverages Form.[16]   Zurich argues the microorganism exclusion precludes coverage.   Rothman contends that the microorganism exclusion applies to "an entirely separate coverage form in the Policy."[17]   Rothman maintains that these contradictory provisions create an ambiguity that must be resolved in favor of coverage.

We need not resolve this conflict.   The exclusion applies only if Rothman asserted an otherwise covered loss.[18]   But, as we shall see, there is no coverage under the microorganism provisions in the first instance.

---

[14] *Id.* at Additional Coverages Form, PPP-0111 (03 14) § 14, Microorganisms, ECF No. 1 at 182.

[15] *Id.* at Commercial Property Definitions, PPP-0103 (08 16) at § 44, Microorganisms, ECF No. 1 at 155 (emphasis in original).

[16] Pl. Reconstructive Orthopaedic Associates II D/B/A The Rothman Institute's Br. In Opp'n to Zurich American Ins. Co.'s Mot. to Dismiss Pl.'s Compl. at 21–23, ECF No. 17.

[17] Compl. ¶ 58.

[18] A "[c]overed cause of loss" is a "fortuitous cause or event, not otherwise excluded, which actually occurs during this policy period." Policy at Commercial Property Definitions, PPP-0103 (08 16) at § 14, Covered Cause of Loss, ECF No. 1 at 150.

Like the business income, the extra expenses, the civil authority, and the ingress/egress coverages, the microorganism coverage applies only if there was a "direct physical loss of or damage to covered property" resulting in a suspension of the insured's operations.   Casting its argument as based on the "physical contamination theory," Rothman argues that the presence of the virus in a property constitutes physical loss or damage.  It does not.

The Third Circuit addressed the physical contamination theory in *Port Authority of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002).  Setting forth the "proper standard for 'physical loss or damage' to a structure" in the context of asbestos in the property, it held that physical loss or damage only occurs if the presence of asbestos resulted in the property's function being nearly eliminated or destroyed, or its structure was made useless or uninhabitable.  *Id.* at 236.  In short, there must be more than mere presence of a virus.  There must be "a distinct, demonstrable, and physical alteration" of the property.  *Id.*

In its complaint, Rothman alleges "there have been instances of the COVID-19 virus present in the Rothman's facilities, which ultimately required Rothman to remove, remediate, clean and sanitize the virus from the internal physical spaces in its facilities, and to also place virus containment barriers in or around its facilities to prevent further physical damage due to the spiraling of the COVID-19 virus."[19]  This allegation falls short of the physical loss or damage standard.  There is no allegation that the properties were made useless or uninhabitable.  Nor is there any allegation that microorganisms on the properties caused property damage resulting in the suspension of operations.   The

---

[19] Compl. ¶ 65.

properties were not inaccessible because there was a microorganism on the properties causing damage.   On the contrary, Rothman could not perform elective surgeries because of government orders, not because the COVID-19 virus was there.

The COVID-19 virus itself did not prohibit access to Rothman's facilities, nor did it cause physical damage causing Rothman to suspend some of its activities.   State governments issued orders prohibiting elective surgeries, not because of physical harm at Rothman's facilities, but to limit the spread of COVID-19 everywhere.

Because Rothman has not alleged "a direct physical loss of or damage" to its properties, it cannot establish coverage under the microorganism provisions of the Business Income Coverage Form or the Additional Coverages Form.

*Communicable Disease Coverage*

The Policy has a Health Industry Coverage endorsement to the Additional Coverages Form and the Business Income Coverage Form.   The endorsement includes coverage for "Communicable Disease Suspension of Operations--Business Income."[20]

The Communicable Disease coverage, unlike the other coverages, does not require direct physical loss of or damage to an insured property.   But, it does require the presence of an actual or suspected communicable disease on the insured premises.

This provision states that:

> The coverage provided at a "**premises**" or "**reported unscheduled premises**" will also cover the actual loss of "**business income**" you sustain due to an order of an authorized public health official or governmental authority that prevents access to that "**premises**" or "**reported unscheduled premises**", or a portion of that "**premises**" or "**reported unscheduled premises**", because of the

---

[20] *See* Policy at Healthcare Industry Coverage, PPP-0409 (08 16), § B, Communicable Disease Suspension of Operations--Business Income, ECF No. 1 at 243.

discovery or suspicion of a communicable disease or threat of the spread of a communicable disease at that "**premises**" or "**reported unscheduled premises**".[21]

There are four requirements for coverage under the Communicable Disease provision:

> 1.    an inability to access all or a part of the insured premises;
>
> 2.    as a result of an order issued by a public health official or governmental authority;
>
> 3.    because of the discovery or suspicion of a communicable disease or a threat of the spread of a communicable disease at that premises or reported unscheduled premises; and
>
> 4.    loss of business income.[22]

Zurich challenges each requirement.  It argues that access to the insured premises was not denied, there were no notices of closing, there was no communicable disease discovered or suspected at any of the premises, and there was no threat of the spread of an existing one at the premises.

Rothman has alleged facts satisfying the second and fourth requirements.  There were governmental orders issued that prohibited elective surgeries.  But, the orders did not prevent access to the premises.  Nor were they issued in response to the discovery or suspicion of COVID-19 at the insured premises.

The loss of business income requirement, which neither party addressed, presents a challenge for Rothman.  The business income from elective surgeries was not necessarily lost, only delayed.  Elective surgeries were eventually performed.

---

[21] *Id.*

[22] *Id.*

Presumably, patients whose surgeries were postponed in response to the governmental orders had them done once the restrictions were lifted.  In that event, Rothman did not suffer a loss.  However, at this stage, Rothman's allegation that it suffered loss of income is not implausible.  Hence, Rothman satisfies the fourth requirement.

Rothman has not alleged facts, which if proven, would meet the first and third requirements.  The government orders issued in response to the pandemic were intended to prevent or mitigate the spread of COVID-19, an undeniably communicable disease. They did so by reducing the number of persons using certain facilities and prohibiting elective procedures and surgeries.  They did not deny access to the insured premises. Staff and patients still had the ability to access the Rothman properties.  Elective surgeries were suspended at some of Rothman's properties.  Those facilities were not shut down. Rothman's facilities remained open to assist with life-sustaining treatment, essential and emergency surgeries, and COVID-19 related needs.  Access was not denied.  Only certain operations were affected.

## Conclusion

Rothman has not stated a claim for coverage under any provision in the policy.  It has not alleged "a direct physical loss of or damage" to its properties, a requirement for coverage under the applicable business income coverage, extra expenses coverage, civil authority, ingress/egress, and microorganism provisions.  Rothman has also failed to state a claim for coverage under the communicable disease provisions of the Additional Coverages Form and the Business Income Coverage Form.  It has not alleged facts sufficient to establish an inability of access because of a government order issued in

response to the discovery, suspicion, or threat of COVID-19 at Rothman's properties.

Therefore, we shall grant the motion to dismiss.[23]

---

[23] We shall not grant leave to amend because the language of the policy is clear and amendment would be futile.